UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBORRA GOMES, | ) | CV F 04 6002 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Deborra Gomes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 9, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for SSI on March 27, 2001, alleging disability since November 1, 1999, due to hepatitis, chronic obstructive pulmonary disorder ("COPD"), asthma, and bipolar disorder. AR 64-66, 69-78. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 26029, 31-35, 36. On April 1, 2003, ALJ William C. Thompson, Jr., held a hearing. AR 251-262. On May 12, 2003, ALJ Thompson found that Plaintiff was not disabled. AR 10-20. On May 14, 2004, the Appeals Council denied review. AR 4-6.

Hearing Testimony

On April 1, 2003, ALJ Thompson held a hearing in Stockton, California. AR 251. Plaintiff did not appear or testify at the hearing. Plaintiff's attorney, Jeffrey Milam, attended. Vocational expert ("VE") Bill Wetzel appeared and testified. AR 251.

At the beginning of the hearing, Mr. Milam indicated that he did not know why Plaintiff did not attend the hearing. AR 253. He also informed the ALJ that Plaintiff was not eligible for SSI since August 2002 because she had received an inheritance from her mother. AR 253. Mr. Milam indicated that a decision could be made based on the record. AR 255.

The ALJ asked the VE to assume an individual of Plaintiff's age, education and past work, who could lift 20 pounds occasionally and 10 pounds frequently, stand and walk in combination for six or more hours, and sit without limitation. This individual could occasionally bend, stoop, twist, squat, kneel, and crawl but could not climb or work at heights. This person could not be exposed to an environment that has excessive amounts of dust, fumes, smoke or other respiratory irritants, and is better suited for employment involving only relatively simple instructions and one- and two- step processes. This person should have relatively restricted contact with the general public and co-workers. The ALJ explained that this means she can work in the presence of others but should not be part of a cooperative work process or a work team.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

AR 256-257. The VE testified that this person could perform the jobs of hotel housekeeping, office cleaner, fast food worker and small parts assembly worker. AR 257.

Plaintiff's attorney asked the VE to assume an individual of Plaintiff's age, education and past work experience, who could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk no more than one and one-half hours per day, and could sit without restriction. AR 257-258. This person is also moderately limited with supervisors, co-workers, and the public (restrictive and not a cooperative work team), has poor decision making skills and is impulsive. AR 258. For at least a third of the day, this person will have problems making any decisions and would be impulsive for a third of the day where she would wander with concentration or drift off with some kind of attention problem. AR 258. The VE testified that this would eliminate all work. AR 258.

The elimination of work came primarily from the lack of concentration and the hindered decision making. AR 258. Without these two limitations, the individual could perform light bench assembly with a sit/stand option, which would erode the positions to about 30,000. AR 259.

If the individual needed to use an inhaler two to three times in a normal work cycle, it would not affect any of the positions identified. AR 259.

<u>Medical Record</u>

Plaintiff received treatment from Stanislaus County Behavioral Health and Recovery Services. Records through 1999 chronicle Plaintiff's extensive history of drug abuse and criminal activities. During that time, she was diagnosed with bipolar disease and opiate abuse and dependency. She was treated with methadone and was discharged from the methadone program in December 1999. AR 235-248.

Plaintiff was treated at Stanislaus County Health Services from June 2000 to December 2000. AR 133-138. She was treated in June 2000 for acute bronchitis. AR 135. In October 2000, she complained of increased shortness of breath, cough and wheezing and an x-ray revealed chronic lung disease. AR 134, 138. She was diagnosed with COPD. AR 134. In December 2000, Plaintiff was treated for a possible kidney infection and asthma. AR 133.

On May 30, 2001, Plaintiff was examined by consultive psychologist Gregory Fields, Ph.D. She complained of a long history of fluctuating moods and indicated that her mood is generally manic. She explained that she has difficulty focusing and sitting still for long periods of time. She reported that she struggled with sleeplessness and has a history of poor decision making and impulsiveness. She was currently taking Lithium but was not tolerating it well and expected it to be replaced with Neurontin. She indicated that she had a long history of heroin and methamphetamine abuse, but has been clean and on methadone for the past five years. She also reported a history of legal violations related to her substance abuse and has been in prison twice and in jail five times. She lives with two of her four children, ages 14 and 5, and is independent in her activities of daily living. She does not drive but is able to use public transportation. She shops for groceries, prepares meals, does the laundry and basic housework, exercises, sometimes visits with friends, reads and watches television. AR 140-142.

Upon mental status examination, her affect was notably manic, her speech was pressured and her movements were rapid. AR 142. She was pleasant and cooperative and put forth a good effort. AR 142. Her insight and judgment were fair and there was no evidence of a formal thought disorder. AR 142. He diagnosed bipolar disorder, not otherwise specified, history of heroin and methamphetamine abuse/dependence, in remission by report, presently on methadone. AR 143. He opined that her ability to deal with the public, supervisors and co-workers appeared to be moderately limited if current behavior is representative of her usual functioning. This limitation is based on her symptoms of bipolar disorder. Her ability to maintain attention and concentration for simple one and two step tasks, and multiple level and higher cognitive tasks, appeared grossly unimpaired. Her ability to withstand the stress and pressure associated with the interview and mental status testing was grossly unimpaired. Dr. Fields opined that Plaintiff's history of significant substance abuse, poor decision making and impulsivity indicated that she could benefit from some supervision regarding supplementary funds. AR 143.

In June 2001, a State Agency physician completed a Psychiatric Review Technique form and indicated that Plaintiff's affective disorder (bipolar disorder) was severe but not expected to last 12 months. AR 147-160. The physician indicated that Plaintiff had mild to moderate

restrictions in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence and pace. AR 157. The physician indicated that Plaintiff had no longitudinal psychiatric history and was currently undergoing treatment. Her condition was expected to improve with treatment within 12 months. AR 159.

An undated Mental Residual Functional Capacity Assessment completed by a State Agency physician indicated that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and was not significantly to moderately limited in her ability to carry out detailed instructions. AR 126-129. The physician indicated that Plaintiff was expected to be capable of performing sustained work related activities by May 2002 with continuing treatment. AR 128.

On July 10, 2001, Plaintiff underwent pulmonary function testing. The spirometry report showed that Plaintiff's moderate obstructive pattern improved after use of the bronchodilator, suggesting that the condition was reversible. AR 162-168, 174.

On July 28, 2001, Plaintiff saw Lisa Hui, M.D., for a comprehensive internal medicine evaluation. Plaintiff complained of being tired and short of breath. She indicated that she gets short of breath with wheezing after walking for five minutes, but she improves with puffs of albuterol. Plaintiff indicated that she has a daily cough and goes to the emergency room once or twice a month for her shortness of breath. She receives breathing treatments from her primary care physician once a month. Plaintiff indicated that she spends her time taking care of her four children and her grandchild, but has difficulty lifting her grandchild and vacuuming due to shortness of breath. She is able to cook, do yard work and housework, mop and do the dishes. AR 171.

Upon examination, Plaintiff had diffuse rhonchi bilaterally and good air entry. Her other systems were normal. Dr. Hui diagnosed Plaintiff with fatigue and COPD, and indicated that her fatigue may be due to a combination of deconditioning, psychiatric insomnia, anemia and hepatitis. Due to her fatigue and shortness of breath, she opined that Plaintiff could stand and/or walk for less than two hours. Dr. Hui explained, however, that Plaintiff's pulmonary function

was unclear,[3] but that Plaintiff reported shortness of breath with walking five minutes and a smoking history. Dr. Hui also explained that a chest x-ray revealed COPD and Plaintiff was coughing throughout the exam. Plaintiff had no sitting restrictions and could lift 20 pounds occasionally and 10 pounds frequently due to her deconditioning. Plaintiff had no postural, manipulative or environmental limitations. AR 172-173.

On August 10, 2001, State Agency physician George A. Jansen, Sr., M.D., completed a Physical Residual Functional Capacity Assessment. He opined that Plaintiff could occasionally lift 20 pounds and 10 pounds frequently, stand and/or walk at least two hours and sit about six hours in an eight hour workday. She was unlimited in pushing/pulling. She could never climb, but could occasionally balance, stoop, kneel, crouch and crawl. She had to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc. AR 176-183. These findings were affirmed in December 2001. AR 183.

On November 1, 2001, a State Agency physician completed a Psychiatric Review Technique form and opined that Plaintiff had a severe mental impairment but that it was not expected to last for 12 months. Plaintiff had mild restrictions in her activities of daily living, mild to moderately difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence or pace. AR 188-201.

A November 1, 2001, Mental Residual Functional Capacity Assessment indicated that Plaintiff was not significantly to moderately limited in her ability to maintain a schedule and regular attendance, work in coordination with or proximity to others, complete a normal workweek, interact appropriately with the public, get along with co-workers, maintain socially appropriate behavior, and be aware of normal hazards and take appropriate precautions. AR 203-204. She could perform simple and moderately complex tasks provided that she remained drug free and continued with her treatment. AR 205.

A treatment note from December 2001 indicates that Plaintiff received clean urine samples from May 2000 until September 2001. When her mother became ill, she started using heroin again and discontinued her treatment program. AR 233.

---

[3] Dr. Hui did not review the results of Plaintiff's July 2001 pulmonary function testing.

In a July 2002 assessment from Stanislaus County Behavioral Health and Recovery Services, Plaintiff reported that she had not used heroin for three years and had been off methadone for two years. She was taking care of her two children, a two-year-old grandchild, and her mother, who had cancer. Plaintiff indicated that she had hepatitis C, but was not taking medication and had stopped taking Lithium some time ago. Her mental status examination showed that her cognition was intact, her mood was mildly dysphoric, her impulse control was intact, she was forgetful, and her judgment and insight were fair. Plaintiff displayed symptoms of bipolar disorder. AR 230-232.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff suffered from the severe impairments of bipolar disorder, hepatitis, COPD and drug abuse. He determined that Plaintiff's complaints were not totally credible when compared to the entire medical record. The ALJ found that Plaintiff had the residual functional capacity ("RFC") for light work, with occasional bending, stooping, twisting, squatting, kneeling, crouching and crawling. Plaintiff could only have limited exposure to heights, chemicals, dust, and fumes/smoke, and could only perform tasks with simple instructions and one and two-step processes. AR 14, 17. Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform the jobs of hotel cleaner, fast food worker and small parts assembler. AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (bipolar disorder, hepatitis, COPD, and drug abuse [heroin and methamphetamine, chronic, recurrent with claimed recent cessation]) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; (5) but retains the RFC to perform a significant number of jobs in the national economy. AR 14, 18-19.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Plaintiff argues that the ALJ (1) failed to properly report the facts related to Plaintiff's substance abuse; (2) erred in his RFC finding; and (3) posed an insufficient hypothetical to the VE.

## DISCUSSION

A.  Interpretation of the Evidence

Plaintiff first argues that the ALJ failed to properly report the facts related to Plaintiff's substance abuse. Specifically, Plaintiff disagrees with the ALJ's statement that "treatment notes are rife with the claimant's ongoing struggle with drug abuse." AR 15. Plaintiff contends that the evidence supports a finding that her drug abuse was in remission.

In his decision, the ALJ explains that none of Plaintiff's treating physicians completed a functional evaluation. AR 15. He then acknowledges that GAF scores are not complete functional evaluation, but undertakes an examination of Plaintiff's GAF scores from the period November 1994 through July 2002. AR 15. He gives the GAF scores, which range from 50 to 55, "less than average weight," even though they apparently came from a treating source. AR 15. Although these GAF scores would suggest serious to moderate symptoms, the ALJ explained that the "treatment notes are rife with the claimant's ongoing struggle with drug abuse," leading to the conclusion that Plaintiff's ongoing drug abuse was a condition material to any mental disability. AR 15. He further explained that if he accepted the GAF scores as reliable, he would have found Plaintiff disabled. AR 15-16.

The ALJ therefore relied upon Plaintiff's drug use, which was documented *at the time* the GAF scores were obtained, to question the reliability of the GAF scores which would have otherwise suggested a disability. For example, treatment notes from December 2001, when Plaintiff was assessed a GAF score of 50, indicate that Plaintiff was clean from May 2000 until September 2001. AR 233. Although the note doesn't specifically state that she relapsed in September 2001, it can be reasonably inferred from the note. Indeed, the note goes on to explain that Plaintiff began using heroin again and discontinued her treatment when her mother became ill. AR 233. Additionally, as the ALJ explains, treatment notes from May 13, 1999, which assess a GAF of 50, diagnose "opioid dependence (RX methadone)." AR 241.

Plaintiff points to Dr. Fields' statement that Plaintiff's drug abuse was in full remission. However, as Dr. Fields further explained, this was by Plaintiff's report. AR 143. Indeed, Plaintiff told Dr. Fields in 2001 that she had been clean for five years, yet the record indicates that Plaintiff was clean from May 2000 to September 2001 and began using again when her mother became ill. AR 143, 233. Moreover, as Respondent notes, Plaintiff's statements regarding her weight loss (AR 126, 135, 138, 171, 232), drug abuse (AR 140, 230), participation in a methadone program (AR 141, 231, 233) and her use of Lithium (AR 140, 232) were not totally accurate.

The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.* Based on the above evidence, the ALJ's interpretation of the evidence was rational and will not be disturbed.

Insofar as Plaintiff contends that a State Agency physician "confirmed there was at least a closed period of disability" from March 13, 2001, to May 2002, her argument fails. First, the report upon which Plaintiff relies is undated and the reference(s) to May 2002 do not support a conclusion that the reviewing State Agency physician found a closed period of disability. AR 126, 159. Indeed, even the page that Plaintiff cites indicates, "no longitudinal history; currently undergoing treatment; improvement expected within 12 months with treatment." AR 159. Similarly, a State Agency physician in November 2001 assessed only mild to moderate mental limitations. AR 198.

B.   RFC Findings

Next, Plaintiff argues that substantial evidence contradicts the ALJ's RFC finding, which she contends should be a sedentary RFC, reduced by an inability to handle even moderate pulmonary irritants. In support of her argument, Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Hui and the other evidence that suggested Plaintiff had more restrictive limitations.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a

week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

In rejecting a portion of Dr. Hui's opinion, the ALJ explained that he could not give full credence to her stated limits on standing and walking since they appeared to be based on the Plaintiff's subjective complaints and her pulmonary function, which Dr. Hui described as "unclear."  AR 16.  Indeed, Dr. Hui did not review the July 2001 spirometry report that indicated Plaintiff's moderate obstructive pattern improved after use of the bronchodilator and suggested that the condition was reversible.  AR 162-168, 174.  *See eg., Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989) (ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints).  The ALJ further explained that upon examination, Dr. Hui found "muscle bulk, tone, and strength were 5/5 in bilateral upper and lower extremities," which indicated no physiological basis for the limits and contradicted Dr. Hui's comments about Plaintiff's deconditioning.  AR 16.  *See eg., Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a lack of supporting clinical findings is also a valid reason for rejecting a treating physician's opinion).  The ALJ gave specific and legitimate reasons supported by substantial evidence in rejecting this portion of Dr. Hui's report.  *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995).

Plaintiff also points to Dr. Fields' report and contends that he determined that Plaintiff would have moderate problems dealing with people in the work place and problems with impulse control and decision making in the workplace.   However, Plaintiff mischaracterizes Dr. Fields' statements.  While he indicated that Plaintiff's ability to deal with the public, supervisors and co-workers appeared moderately limited, this restriction existed only "if current behavior is representative of usual functioning."  AR 143.  Moreover, Dr. Fields noted Plaintiff's "history of

11

significant substance abuse, poor decision making and impulsivity" in discussing her competence to handle funds and as support for his suggestion that she could benefit from some supervision. AR 143. He did not, as Plaintiff contends, indicate that her history of poor decision making resulted in a current limitation in the work place. As Respondent points out, in July 2002, Plaintiff's mental status exam revealed that although her mood was quite anxious, her impulse control was intact and her judgment was fair. AR 231.

Insofar as Plaintiff contends that the ALJ should have ordered a second consultive examination to determine if her mental condition had improved, her argument is without merit. There is no indication that the record was ambiguous or inadequate so as to trigger the ALJ's duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Neither Dr. Fields' report nor the July 2002 assessment from Plaintiff's mental health provider indicated that Plaintiff had significant mental deficits, despite her low GAF scores.

Finally, Plaintiff's contention that the RFC should have included an inability to handle even moderate pulmonary irritants is not supported by the record. Dr. Hui did not impose any environmental restrictions, despite Plaintiff's complaints of shortness of breath, hepatitis and anemia. In any event, the ALJ indicated that Plaintiff could have only limited exposure to chemicals, dust, and fumes/smoke, a finding supported by the State Agency physician. AR 17, 180.

C.  Hypothetical Question

Plaintiff contends that the hypothetical question posed to the VE was insufficient. First, Plaintiff contends that the assumption that Plaintiff could stand and walk "in combination for 6 or more hours" was unclear. AR 256. Second, Plaintiff contends that the ALJ manufactured the hypothetical question as the limitations included therein are not supported by the medical record and the ALJ omitted numerous limitations not included. Finally, Plaintiff contends that the hypothetical is vague insofar as the ALJ reported that Plaintiff's social capacity is "relatively" restricted. AR 256-257.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the ALJ found that Plaintiff could perform light work with additional non-exertional restrictions. AR 17. He found Plaintiff would have restricted public and co-worker contact, could occasionally bend, stoop, twist, squat, kneel, crouch and crawl, and could only have limited exposure to heights, chemicals, dust, and fumes/smoke. AR 17. She could only handle simple instructions and one and two step processes. AR 17.

In questioning the VE, the ALJ asked him to assume an individual "capable of standing and walking in combination for six or more hours in a day . . ." AR 256. Contrary to Plaintiff's argument, the limitation seems clear and there was no indication that the VE was unsure of the meaning. Plaintiff could stand and walk for six hours out of an eight hour workday. The VE indicated that a person with this limitation, in addition to the other limitations included in the hypothetical, could perform the positions of hotel/motel housekeeper, office cleaner, fast food worker and small parts assembler. AR 257. Even if a sit/stand option was required, as Plaintiff contends, the VE testified that Plaintiff could perform light bench assembly. AR 259.

Nor was the VE's use of the term "relatively" vague. The ALJ asked the VE to assume an individual who should have "relatively restricted contact with the general public as well as relatively restricted contact with co-workers. . ." AR 256-257. He continued, "She can work in the presence of others but should not be part of a cooperative work process or a work team." AR 257. This detailed and specific explanation negates any confusion that may have arisen from the term "relatively."

Finally, Plaintiff contends that the hypothetical was manufactured by the ALJ. She argues that the record supports numerous limitations, such as mental limitations, that were not included in the RFC. She also contends that the ALJ improperly weighted the included limitations, such as Plaintiff's restriction from environmental hazards.

1  Contrary to Plaintiff's suggestion, the limitations in the hypothetical question are
supported by the record. AR 126-128, 143, 157, 159, 173, 174, 177-180, 183, 198, 200, 203-205, 230-232. Although Plaintiff disagrees with the ALJ's ultimate conclusion, the courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Deborra Gomes.

IT IS SO ORDERED.

Dated:  September 7, 2005           /s/ Dennis L. Beck
3b142a                              UNITED STATES MAGISTRATE JUDGE